UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEITH BAGLEY #885214,

        Plaintiff,

v.

UNKNOWN EUBANKS,

        Defendant.

_____/

Case No. 2:20-cv-00151

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Keith Bagley pursuant to 42 U.S.C. § 1983. Bagley alleges that while he was confined at the Alger Correctional Facility, Corrections Officer (CO) Eubanks forced him to lift heavy garbage bags on July 6, 2019, despite Bagley informing him about his medical condition. Bagley states that Eubanks threatened him with segregation if he refused to throw out the trash. (ECF No. 1, PageID.3.) Bagley complied with the order. As a result, Bagley states he was injured and was "laid-in" after he submitted a healthcare kite. Bagley states that he wrote a grievance against Eubanks. He says that, on July 7, 2019, Eubanks allegedly told him that if he did not want to work, Eubanks would make sure Bagley never worked again. On July 9, 2019, healthcare placed Bagley on a permanent work restriction. Bagley blames Eubanks for the medical work restriction.

Bagley asserts that Eubanks (1) violated his rights under the Eighth Amendment by forcing him to perform a duty that he was medically incapable of performing and (2) violated his rights under the First Amendment by threatening him in retaliation after Bagley wrote a grievance. (*Id.*)

CO Eubanks has filed a motion for summary judgment based on Bagley's failure to exhaust his administrative remedies. (ECF No. 11.) Bagley has filed a response and Eubanks has replied. (ECF Nos. 12 and 14.) The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny the motion for summary judgment because genuine issues of fact exist regarding whether Bagley exhausted claims through the MDOC grievance process.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner

may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided

4

adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies

regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Analysis

The parties agree that Bagley submitted **grievance LMF-19-07-0828-28e**, which raises a claim against Defendant Eubanks. Defendant Eubanks argues that the grievance failed to properly exhaust any claim because it was rejected as untimely at Step III. Bagley claims that the grievance was improperly rejected as untimely at Step III.

The timing of Bagley's grievance and the MDOC responses are summarized below:

- Bagley's Step I grievance is dated July 12, 2019 and was received on July 15, 2019. (ECF No. 12-3, PageID.67-68.)

- The Step I response is dated July 24, 2019 and was returned to Bagley on July 26, 2019. (*Id.*, PageID.67.)

- Bagley's Step II appeal was dated August 8, 2019 and received by the MDOC on August 8, 2019. (ECF No. 13-2, PageID.106.)[3]

- The Step II response indicates that it was signed by Warden Bauman on August 19, 2019. (*Id.*, PageID.108.)

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[3] Bagley provided the Step II grievance, the Step II receipt, and response. Defendant did not attach a copy of the Step II grievance, receipt, or response to his motion.

- The record does not conclusively establish the date when Bagley sent in his Step III appeal. (*Id.*, PageID.106.) Bagley says that he sent the Step III appeal on September 10, 2019, after receiving it on August 28, 2019. (Declaration, ECF No. 13-4, PageID.112.)

- The Step III appeal was rejected. The rejection was mailed to Bagley on January 22, 2020. (ECF No. 12-3, PageID.66.)

Bagley attests that he received his Step II response on August 28, 2019. (ECF No. 13-4, PageID.112 (Declaration).) He says that he placed his Step I, II, and III appeals in an envelope, and placed the envelope in the institutional mailbox on September 10, 2019. (*Id.*) Bagley says he mailed these documents within 10 business days of receiving the Step II response, thus making his Step III appeal timely. (*Id.*)

As noted above, the Step II response is dated August 19, 2019. (ECF No. 13-2, PageID.108.) The Step III grievance response was rejected, but the response did not state the reason for the rejection. The Step III response states:

> **STEP III GRIEVANCE DECISION**          DB Rec#: 110776
>
> **To Prisoner:** Bagley #885214
>
> **Current Facility:** KCF
>
> **Grievance ID#:** LMF-19-07-0828-28e
>
> Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".
>
> **THE STEP III APPEAL IS REJECTED.**
>
> The grievance category code has been modified from **LMF-19-07-0828-26b** to **LMF-19-07-0828-28e**. All future references to this grievance should use the modified code.
>
> THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.
>
> _[signature]_          Date Mailed: 01/22/2020

(ECF No. 12-3, PageID.66; ECF No. 13-3, PageID.110.)

Defendant also attached the affidavit of Richard Russell, Manager of the Grievance Section in the Office of Legal Affairs for the MDOC. (ECF No. 12-4, PageID.75-77.) Russell explained that Bagley's Step III grievance was rejected as untimely because Bagley's Step I response was returned to him on July 26, 2019. The affidavit states in part:

10

- Because Bagley did not include any documents that LMF requested an extension for the Step II grievance response, his Step III grievance appeal was due within 35 business days of July 26, 2019—i.e., September 16, 2019.

- Bagley's Step III appeal was not received until September 26, 2019. (Att. B at 4.)

6. Once the OLA Grievance Section determined that the Step III appeal for LMF-19-07-0828-26b was untimely, it rejected the appeal and changed the grievance code to LMF-19-07-0828-28e, which reflects the rejection for untimeliness. (Att. B at 3.)

(*Id.*, at PageID.76.)

In the opinion of the undersigned, Bagley's attestations create a question of fact as to when he received his Step II response and whether he submitted his Step III appeal in a timely manner. Bagley attests that he mailed his Step III appeal documents on September 10, 2019. (ECF No. 13-4, PageID.112.) Russell says Bagley's Step III appeal documents were due on September 16, 2019, but were not received until September 26, 2019. (ECF No. 12-4, PageID.76.) The undersigned cannot rule out the possibility that Bagley mailed his documents in a timely manner.

The undersigned must also consider which issues Bagley exhausted or attempted to exhaust through the grievance process. Bagley's complaint asserts that Defendant Eubanks forced him to lift heavy trash bags despite his medical condition in violation of his Eighth Amendment rights. Bagley also alleges that after he submitted a grievance later that day, Eubanks retaliated against him by threatening to prevent him from ever working again. Two days later, healthcare gave Bagley a

11

permanent work restriction due to his injuries. A copy of Bagley's Step I grievance is attached below:

> **MICHIGAN DEPARTMENT OF CORRECTIONS** SEP 2 6 2019  4835-4247 10/94
> **PRISONER/PAROLEE GRIEVANCE FORM** Office of Legal Affairs  CSJ-247A
>
> Date Received at Step I 7-15-19   Grievance Identifier: LMF/1907/0828/26B
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Bagley | 885214 | LMF | 3 122 B | 7-6-19 | 7/12/19 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 7 9 19
> If none, explain why. I went to see the Dr or nerse
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> 7-6-19 I was working in the kitchen co Deal said that I was on Sanatation I said (I cant do that I have had back sergery shalder Heart and knee sergery) I can not pick them heavy Garbage Bagg up he said ok a little wile later co eubanks said for me to get over here and do the trash I told him I cant Becouse I had all them sergerys he said get over there and do it or get a DDO and going to the hole that is 100% crule and unusual punishment so wene I was throwing the trash witch I was ordered to do my back snapped and he said now take it to the Dumpster he was screaming and cursing at me co kalacek finely yealed at me to go back Becouse I was bitching to much and acting like a little bitch
>
> Grievant's Signature
>
> RESPONSE (Grievant Interviewed? ☒ Yes ☐ No  If No, give explanation. If resolved, explain resolution.)
>
> Interviewed Prisoner Bagley (#885214) and addressed his concerns regarding humane treatment of prisoners. Contacted Officer Eubanks who informed me he had told Prisoner Bagley to remove the trash bags. Contacted Officer Kaladic who informed me he did not use any derogatory terms while addressing Prisoner Bagley. If Prisoner Bagley is medical unfit to preform the job duties required of him Health Services would have notified Classifications that he is unable to do so. There is no evidence of a violation of departmental policies or procedures. Grievance denied at Step 1
>
> | Respondent's Signature | Date | Reviewer's Signature | Date |
> |---|---|---|---|
> | C. Perry | 07-23-2019 | J. Naeyaert | 7/24/19 |
> | SGT. Perry | CSS-11 | J. Naeyaert | RUM |
> | Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |
>
> Date Returned to Grievant: 7-26-19   If resolved at Step I, Grievant sign here. Resolution must be described above.
>
> DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

(ECF No. 12-3, PageID.67.)

Bagley's Step I grievance asserted factual claims that could support an Eighth Amendment claim. Bagley clearly stated that Eubanks's order to take out the trash

12

was cruel and unusual punishment due to his medical condition. In the opinion of the undersigned, Bagley's Eighth Amendment claim should proceed.

This grievance does not mention the original alleged retaliatory act: that he was ordered to take out the trash after he threatened to file a grievance. In addition, this grievance, which states an incident date of July 6, 2019, assert the second alleged retaliatory act: that on July 7, 2019, that Eubanks came to Bagley's unit and stated: "So you['re] not going to work huh? Your going to bitch up huh, well if you['re] not going to work, then I'll make sure you'll never work." (ECF No. 1, PageID.3-4.)

Bagley's statement in the declaration he attached to his complaint (ECF No. 1-1) explains that he spoke to the Grievance Coordinator about the subsequent alleged retaliatory acts. (Id., PageID.10.) Bagley's statement is shown below.

> not going to work, then I'll make sure you'll never work." **I did write the grievance coordinator** and asked if I could write a grievance on Eubanks for his retaliatory threats, and the grievance coordinator told me "**No, it will be duplicative, and I will reject it.**" (See attached hereto).

Although Bagley did not include an attachment with his declaration, his statement is enough to raise a genuine issue of fact as to whether the Grievance Coordinator gave Bagley incorrect information that prevented Bagley from filing a second grievance against Eubanks. According to Bagley's declaration, the threats on July 7 would have been separate and distinct from alleged threats on July 6. He could have filed a separate, non-duplicative grievance on these alleged threats. Thus, a genuine issue of fact remains with respect to the exhaustion of Bagley's retaliation claim against Eubanks for threats on July 7, 2019.

## V. Recommendation

Therefore, the undersigned respectfully recommends that the Court deny Defendant's motion for summary judgment.

Dated:  April 7, 2021                    /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).