UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEITH BAGLEY #885214,                    Case No. 2:20-cv-151

        Plaintiff,                    Hon. Jane M. Beckering
                                      U.S. District Judge
v.

MICHAEL EUBANKS,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.   Introduction

This Report and Recommendation (R&R) addresses Defendant Corrections Officer (CO) Eubanks's motion for summary judgment (ECF No. 29).

Plaintiff — state prisoner Keith Bagley — filed suit pursuant to 42 U.S.C. § 1983 on August 21, 2020.  In his verified complaint, Bagley alleges that while he was confined at the Alger Correctional Facility (LMF) in Munising, Michigan, CO Eubanks: (1) acted with deliberate indifference to a serious risk of harm related to his medical condition, and (2) retaliated against him for writing a grievance.  (ECF No. 1, PageID.5.)  Specifically, he alleges that CO Eubanks forced him to lift heavy garbage bags into a compactor, despite Bagley informing CO Eubanks he had prior heart, back, and shoulder surgeries and could not lift the bags. *(Id.,* PageID.2.)  When CO Eubanks responded by threatening Bagley with segregation and a Disobeying a Direct Order (DDO) misconduct ticket, Bagley complied with the order, causing him

1

to injure his back. (*Id.*, PageID.3.) Bagley then wrote a grievance against CO Eubanks over the incident. (*Id.*) Bagley alleges that the next day, CO Eubanks told Bagley that he (Eubanks) would ensure Bagley never worked again. (*Id.*, PageID.4.) Bagley says that he was placed on a permanent work restriction two days after that encounter. (*Id.*)

CO Eubanks now moves for summary judgment. (ECF No. 29.) Eubanks asserts that Bagley cannot satisfy the objective component of his deliberate indifference claim because Bagley's medical condition was not obvious, and Bagley has not provided verifying medical records of his condition. (ECF No. 30, PageID.187.) Eubanks also argues that Bagley cannot satisfy the subjective component because Eubanks was unaware that Bagley had a serious medical condition preventing him from lifting the trash bags into the compactor. (*Id.*, PageID.191.) With respect to Bagley's retaliation claim, Eubanks asserts that no adverse action occurred. (*Id.*, PageID.194.) Finally, CO Eubanks contends that he is entitled to sovereign immunity in his official capacity, and qualified immunity in his individual capacity. (*Id.*, PageID.197-200.)

The Court is sympathetic to Bagley's condition. He says he has had a chronic back injury dating back to the 2000s, and the injury he sustained on July 2019 allegedly caused considerable pain. Nevertheless, the undersigned respectfully recommends that the Court grant CO Eubanks's motion for summary judgment because there are no genuine issues of fact as to Bagley's deliberated indifference claim. The records before the Court demonstrate that Bagley was medically cleared

to work in Food Services without any restrictions. Bagley has provided no documentation that shows otherwise. Bagley asked and expected Eubanks to change Bagley's work assignment – throwing out the mess hall trash – due to Bagley's supposedly chronic, long-term back problems and other issues. In the opinion of the undersigned, Eubanks cannot be expected to credit a verbal report of a chronic problem that is not reflected in a medical clearance and then modify Bagley's work assignment based on this verbal report. Eubanks may have used aggressive language with Bagley, but his actions were not deliberately indifferent to Bagley's serious medical needs. Accordingly, the undersigned finds no genuine issue of material fact on Bagley's deliberate indifference claim.

In addition, the undersigned concludes Eubanks is entitled to summary judgment on Bagley's retaliation claim because Bagley has not established a genuine issue of material fact on the adverse action element of his retaliation claim.

Furthermore, CO Eubanks is entitled to sovereign immunity in his official capacity and qualified immunity in his individual capacity.

**II.    Factual Allegations**

On July 6, 2019, Bagley was assigned to work in food service at LMF and was performing part of his duties by taking out the trash. (ECF No. 1, PageID.2.)  CO Eubanks was supervising Bagley. (*Id*.)  Bagley told CO Eubanks that he could not lift certain trash bags which Bagley estimated to weigh 75 pounds. (*Id*.)  Bagley explained to CO Eubanks that he had prior surgeries to his heart, shoulder, and back which prevented him from lifting the bags. (*Id*.) Bagley says that he told CO Eubanks

he had medical details supporting his claim, which Eubanks could find in his file.[1] (*Id.*)

According to Bagley, Eubanks responded by stating "I don't care about that, if you don't get over here and do this trash, you['re] getting a [disobeying a direct order ticket], and I'm going to put you in segregation." (*Id.*) In fear that Eubanks would carry out his threats, Bagley says he complied. (*Id.*) While throwing the bag into the compactor Bagley says that his back "snapped," causing intense pain throughout his back and legs. (*Id.*) Despite Bagley's continued pleading, CO Eubanks ordered Bagley to keep working and Bagley complied. (*Id.*) After his shift ended, Bagley filed a grievance regarding the incident. (*Id.*) Then, Bagley submitted a kite to prison healthcare and was immediately "laid-in" due to his medical history, and preexisting health accommodations.[2] (*Id.*)

The following day, Bagley alleges that CO Eubanks came to Bagley's cell and threatened him, stating, "So you['re] not going to work huh? You['re] going to bitch up huh[?] [W]ell if you['re] not going to work, then I'll make sure you'll never work." (ECF No. 1-1, PageID.10.) Bagley attempted to file a grievance after this threat but was told it would be duplicative. (*Id.*) Two days later, on July 9, Bagley says that he was evaluated by prison healthcare and placed on permanent work restriction. (ECF No. 1, PageID.3.) Bagley says that the injury has caused him to get very little sleep,

---

[1] These details allegedly included special accommodations for a bottom-bunk assignment, and for a ground-floor cell due to his previous injuries. (ECF No. 1, PageID.3.)
[2] The undersigned interprets the term "laid-in" to mean that Bagley was required to stop working and engaging in physical activities.

4

made exercise impossible, and occasionally prevented him from walking to the dining hall. (*Id.*)

In contrast, CO Eubanks says that after Bagley told Eubanks he had a bad back and refused to take out the trash, Eubanks asked whether Bagley had a medical detail including work restrictions. (ECF No. 30-6, PageID.234 (Eubanks' Affidavit).) Bagley informed Eubanks that he did not have any work restrictions. (*Id.*) Accordingly, CO Eubanks says that he ordered Bagley to take the garbage bags to the compactor, or Eubanks would issue a DDO misconduct ticket. (*Id.*) CO Eubanks further asserts that the garbage bags were "not particularly heavy." (*Id.*) Eubanks says that Bagley did not complain after lifting the bags into the compactor, and that Bagley did not appear to be in pain or in need of medical attention after lifting the bags. (*Id.*) Eubanks says that he does not recall being threatened with a grievance for the July 6 incident, and that he never threatened Bagley's future employment. (*Id.*)

CO Eubanks provides documents showing that Bagley was not on any medical restrictions at the time of this incident. (ECF No. 30-3 (Health Care Clearance Form, dated May 14, 2019); ECF No. 30-7 (Program Classification Report dated May 13, 2019).) Eubanks further asserts that Bagley was placed on a temporary, not permanent, work restriction. (ECF No. 30, PageID.194.) Eubanks provides a July 9, 2019 prison healthcare Medical Detail which shows Bagley was placed on a one week no-work assignment. (ECF No. 30-9, PageID.241.) Eubanks also provides a July 29, 2019 Medical Detail showing that Bagley was given a second, month-long work

5

restriction.  (ECF No. 30-10, PageID.243.)   Finally, CO Eubanks provides an Assignment Clearance from September 18, 2019 showing that Bagley was cleared for work that day.  (ECF No. 30-11, PageID.245.)  Bagley has not worked a prison job since the incident.  (ECF No. 1-1, PageID.10.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Eighth Amendment – Deliberate Indifference to Serious Medical Condition

Bagley's first claim is that CO Eubanks demonstrated deliberate indifference to Bagley's serious medical condition by forcing him to lift heavy trash bags when Bagley had a history of back and shoulder injuries.  (ECF No. 1, PageID.5.)  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against

6

those convicted of crimes. U.S. Const. amend. VIII. Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 102, 104-05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). To establish deliberate indifference in a prison workplace, prisoners must show "that prison officials have 'knowingly compel[led] them] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful." *Betty v. McKee*, 2019 WL 140194, at *4 (W.D. Mich. Jan. 9, 2019) (quoting *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977)); *accord Berry v. Burnell*, 39 F.3d 1056, 1057 (9th Cir. 1994).

A claim of deliberate indifference has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* To satisfy the subjective component, the plaintiff must show that the defendant was aware of facts suggesting that a substantial risk of serious harm existed, and that the defendant actually surmised that a substantial risk of serious harm existed. *Mingus v. Butler*, 591 F.3d 474, 480 (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

As an initial matter, the undersigned notes that the events underlying Bagley's claims are unfortunate. It is clear that Bagley injured his back on July 6, 2019, and the undersigned is sympathetic to Bagley's pain. But even assuming for the purposes

7

of summary judgment that lifting the heavy trash bags posed a sufficiently serious risk of substantial harm to Bagley due to his pre-existing back condition, Bagley has not set forth facts from which a reasonable jury could determine that Eubanks acted with deliberate indifference to that risk.

The first issue before the Court is whether Bagley, in fact, had a work restriction based on a chronic back injury. Based on a review of the record, the undersigned concludes that there is no genuine issue of material fact on this point; the record before the Court indicates that Bagley did not have a medical work restriction at the time of his injury on July 6, 2019.

The record shows that Bagley was transferred to LMF in early May 2019. (ECF No. 30-7, PageID.237 (Bagley's Classification Report).) Bagley's Classification Report, which he signed on May 13, 2019, indicates that he "may be assigned to any job pools per policy for institutional needs." (*Id.*)

The next day, May 14, 2019, MDOC Health Care Services found that Bagley was cleared to work in Food Services *with no medical limitations*. (ECF No. 30-3, PageID.215 (clearance form).) This clearance form indicates that "[a] nursing chart review was performed to determine fitness to work in the following assignments identified." (*Id.*) The form indicates that the specific assignment was food services. (*Id.*) As a result of the review, no limitations were found. A portion of the form is shown below.

> **OTHER ASSIGNMENT**
> A nursing chart review was performed to determine fitness to work in the following assignments identified.
>
> Specific assignment for which review is being requested  **Food Service**
>
> Name and Title of person requesting the nursing chart review  A. Zellar, CPC
>
> ☐ Prisoner is medically cleared to work all work and school assignments.
> If prisoner has medical limitations, list below. If no limitations, indicate "NONE".
>
> ☒ Prisoner is medically cleared to work in the assignment identified above.
> If prisoner has medical limitations, list below. If no limitations, indicate "NONE".
> NONE
>
> ☐ Prisoner is not cleared to work in the assignment identified. Restriction is temporary, may be reconsidered for the assignment at a later date.
>
> ☐ Prisoner is not cleared to work in the assignment identified. Restriction is permanent.
>
> _____ A/HOM     5/14/19
> Reviewer's Signature and Title     Date
>
> **HEALTH WORK ASSIGNMENT CLEARANCE**
>
> Patient Identification
> Name: **Bagley**
> Number: 885214
> D.O.B. 10/10/1968
>
> DISTRIBUTION: Health Record; Institutional File; Counselor File; Classification

(*Id.*)

Thus, as of May 14, 2019, Bagley was cleared to work in Food Services without any medical limitations.

On May 21, 2019, he was assigned to Food Service with a start date of May 22, 2019. (ECF No. 30.8.) About a month-and-a-half later, the incident at issue in this case took place.

Bagley and Eubanks agree that Eubanks ordered Bagley to take out the garbage. (ECF No. 1, PageID.2 (Complaint); ECF No. 30-6 (Eubanks's deposition).) And the parties agree that Bagley told Eubanks that he had a history of back surgery

and that he could not lift the garbage bags. (ECF No. 1, PageID.2-3 (Complaint); ECF No. 30-6, PageID.234.)

Bagley has also testified that he, in fact, had a restriction that was listed in his daily itinerary. (ECF No. 30-2, PageID.207 (Bagley's deposition).) Bagley has not provided a copy of any medical limitation to the Court. It should also be noted that his description of the limitation found in his daily itinerary makes no sense. In his deposition, he said at first that his restrictions would be found on his itinerary; but then he changed his statement on that. (*Id.*)

Bagley also testified that he showed Eubanks the scar on his back from his back surgery. (*Id.*)

Eubanks testified that Bagley admitted that he did not have any work restrictions. (ECF No. 30-6, PageID.234.) Eubanks does not mention being shown a scar.

Based on all of the records before the Court, the undersigned concludes that MDOC reviewed Bagley's medical records, concluded that he did not qualify for a work restriction, and, as a result, Bagley did not have a work restriction at the time of his injury.

As a related matter, Bagley has not placed medical information in the record that confirms that he was suffering from a chronic back condition that restricted his ability to work. In fact, by September 2019, all of Bagley's work restrictions had been lifted and he was again cleared to return to work. (ECF No. 30-11, PageID.245 (medical clearance form dated Sept. 18, 2019).)

10

Second, the Court must consider whether Bagley's statement to Eubanks – without supporting documentation – would constitute knowledge of Bagley's serious medical need for purposes of his Eighth Amendment deliberate indifference claim.

In *Smith v. Yarrow*, the plaintiff-prisoner's supervisor ordered the plaintiff to engage in various physical tasks while the plaintiff was suffering from a hernia. 78 F. App'x 529, 535-36 (6th Cir. 2003). Although the plaintiff did not have a work restriction, the court determined that there was a genuine issue of material fact as to the subjective component of the plaintiff's claim because the official had actual knowledge of the hernia. *Id.* at 536. In that case, the defendant had personally observed the swelling caused by plaintiff's hernia and, believing that the swelling was an object that the plaintiff was concealing, inquired as to what it was it was. *Id.* The plaintiff informed his supervisor that it was a hernia and showed her the bottom bunk detail that he had been given as a result of the hernia. In addition, other prison officials had informed the defendant that the plaintiff was suffering from a hernia. *Id.*

The situation here is factually distinguishable from the situation in *Smith v. Yarrow*. Bagley does not set forth facts suggesting that Eubanks had actual knowledge of an acute back injury when he ordered Bagley to lift the trash bags. Bagley's condition, if it existed, was chronic and long-term, not acute. As Bagley claims, his back condition was the result of a work-related accident and surgery at

11

least ten years prior. (ECF No. 32, PageID.251.) Thus, Bagley's inability to safely lift the bags was not something that Eubanks could observe for himself.[3]

Ultimately, all that Eubanks had to go on was Bagley's statement that he had a chronic condition that prevented him from lifting trash bags. In the opinion of the undersigned, Bagley's statement to Eubanks on July 6, 2019 – which was not supported by medical documentation or a work restriction – is not enough to create a genuine issue as to the subjective component of Bagley's claim. A prison official does not act with deliberate indifference by disbelieving a prisoner's unsubstantiated claim that he is at risk of harm. *See Mays v. Perala*, No. 2:17-CV-95, 2019 WL 4601712, at *2 (W.D. Mich. Sep. 23, 2019) (granting summary judgment because the defendant's refusal to alert medical professionals after plaintiff complained of a forthcoming seizure suggested that the defendant disbelieved the plaintiff, not that he was deliberately indifferent). Obviously, there are many unpleasant tasks in a prison, and prisoners are required to carry out many of them. The undersigned is unwilling to say that a Corrections Officer has a constitutional duty to change a prisoner's work assignment based on an undocumented claim of a chronic back injury.

Bagley essentially invites this Court to find Eubanks liable for a serious risk of harm that Eubanks was not aware of, and that Bagley had the ability to prevent. If Bagley had not signed off on his classification report or had kept himself informed

---

[3] As noted above, Bagley says that he showed Eubanks a scar from his back surgery. (ECF No. 30-2, PageID.207.) But a scar from a surgery a decade prior is different from an active hernia. The Court cannot reasonably expect a Corrections Officer to observe a prisoner's scar and then draw medical conclusions about that prisoner's ability to work.

of his work restrictions or lack thereof, Bagley would not have been in the position in which he found himself on July 6, 2019. Though sympathetic to the pain that Bagley experienced as a result of the incident, the undersigned recommends that the Court decline Bagley's invitation; Eubanks was simply performing his job duties as Bagley's supervisor when he ordered Bagley to perform the job duties that Bagley had been medically cleared to perform. The undersigned concludes that Bagley has failed to establish a genuine issue of material fact regarding his deliberate indifference claim. Accordingly, the undersigned respectfully recommends that this Court grant Eubanks's motion for summary judgment with respect to this claim.

## V. First Amendment – Retaliation

Bagley also claims that CO Eubanks retaliated against him for filing a grievance against CO Eubanks by preventing Bagley from obtaining any future job while in prison. (ECF No. 1, PageID.3-4.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

For a plaintiff to satisfy the first element of his retaliation claim, he must show that he was "engaged in conduct protected by the Constitution or by statute." *Thaddeus-X*, 175 F.3d at 386. When a plaintiff alleges that he was engaged in

13

conduct protected by the Constitution, he must show that he acted pursuant to a provision of the Constitution that "define[s] individual rights with which the government generally cannot interfere." *Id.* at 387.

An adverse action, the second element of a retaliation claim, is "one that 'would deter a person of ordinary firmness' from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). There is no definitive list of actions that qualify, but they may include discharge from work, placement in administrative segregation, or the public release of humiliating information. *Thaddeus-X*, 175 F.3d at 396-97 (collecting cases). To establish liability, a plaintiff must prove that defendant was personally involved in the adverse action. *Murphy v. Grenier*, 406 F.App'x 972, 974 (6th Cir. 2011) (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)). The plaintiff must also demonstrate that the defendant had the authority take the adverse action. *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999).

After a prisoner establishes the first two elements, the prisoner must show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has employed a burden-shifting approach:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he

14

> would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

It is without dispute that filing a grievance is considered protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). The Sixth Circuit has repeatedly held that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill* 630 F.3d at 472 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). "If the grievances are frivolous, however, this right is not protected." *Id*. It does not appear, nor does CO Eubanks argue, that the grievance filed by Bagley was frivolous and therefore unprotected. Thus, Bagley satisfied the first element of his retaliation claim.

CO Eubanks asserts that he is entitled to summary judgment because Bagley cannot satisfy the second element: that he suffered an adverse action. (ECF No. 30, PageID.194-197.) Bagley asserts that the day after he filed a grievance against CO Eubanks regarding the trash bag incident, CO Eubanks came to Bagley's cell and stated, "well if you're not going to work, I'll make sure you'll never work." (ECF No. 1, PageID.4.) Bagley claims that two days later, on July 9, 2019, he was placed on a "permanent work restriction," which constituted an adverse action. (ECF No. 1, PageID.4.)

CO Eubanks argues that Bagley's work restrictions did not constitute an adverse action because they were temporary, and Bagley is currently eligible for

employment.[4] (ECF No. 30, PageID.197.) But whether Bagley's work restrictions following the July 6, 2019 incident constituted adverse action is irrelevant because Bagley did not present any evidence that CO Eubanks was involved in implementing the work restrictions. *Shehee*, 199 F.3d at 301 (granting prison officials qualified immunity because they were not personally involved with the adverse action that the plaintiff endured); *Taylor v. Smith*, No. 2:14-cv-175, 2016 WL 6393468, at *4 (W.D. Mich. Aug. 24, 2016) (dismissing defendant because she lacked authority to commit the adverse action). Bagley merely claims that CO Eubanks threatened to ensure he never worked again (ECF No. 1, PageID.4), and that prison healthcare later placed him on work restrictions. (*Id.*) And Bagley's July 9, 2019 Medical Detail makes clear that the work restrictions were implemented by prison healthcare, not custody staff. (ECF No. 30-9, PageID.241.) Because Bagley has not set forth evidence creating a genuine issue of material fact as to Eubanks's involvement in the alleged adverse action, the undersigned respectfully recommends that this Court grant summary judgment in Eubanks's favor on the retaliation claim.

## VI. Qualified Immunity

CO Eubanks also asserts that he is entitled to summary judgment under the qualified immunity doctrine. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory

---

[4] Eubanks provides a Program Classifications Report from September of 2019 demonstrating that Bagley's has been eligible for work since then. (ECF No. 30-12, PageID.247.)

or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional

17

question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Bagley asserts two claims: deliberate indifference to a serious medical need, an Eighth Amendment violation, and retaliation for writing a grievance, a First Amendment violation. (ECF No. 1, PageID.5.) Both claims involve the violation of clearly established constitutional rights. *See Mabry*, 556 F.2d at 882*, and Hill*, 630 F.3d at 472. But because the undersigned finds that there are no genuine issues of material fact and that CO Eubanks did not act with deliberate indifference or retaliate against Bagley, the undersigned finds that Eubanks is entitled to qualified immunity on both claims.

## VII. Eleventh Amendment

Even if the Court declines to grant Eubanks summary judgment on the merits of Bagley's claims, the Court should grant Eubanks summary judgment as to Bagley's official capacity claims on sovereign immunity grounds.

Bagley does not request injunctive relief in this case, he requests only compensatory and punitive damages. (ECF No. 1, PageID.5.) A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the

19

State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). As such, Bagley's claims against CO Eubanks in his official capacity are properly dismissed in accordance with Eleventh Amendment.

### VIII. Recommendation

The undersigned respectfully recommends that the Court grant CO Eubanks's motion for summary judgment because there are no genuine issues of fact, and no reasonable jury could determine that Bagley has satisfied either component of his deliberate indifference claim or established that Eubanks took an adverse action against Bagley. Furthermore, CO Eubanks is entitled to sovereign immunity in his official capacity and qualified immunity in his individual capacity.

If the Court accepts these recommendations, the case will be dismissed.

Dated: August 12, 2022
/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).